# WHEELING.

## John et al. v. Barnes et al.

### Submitted June 13, 1882—Decided April 14, 1883.

(Woods, Judge, Absent.)

1. A testator used the following language in his will: "I bequeath unto my wife, Lucy, all the balance of my estate, both real and personal, to have and to hold as long as she remains my widow. At her death I direct, that my estate shall be divided as follows: Unto my sons Alvin and Rush I will and bequeath the farm-house and lot now in the occupancy of Wm. O. Protzman; and the residue of my estate I direct to be equally divided between my daughters," (naming them) "and my two sons Alvin and Rush. * * I hereby constitute and appoint my wife, Lucy, my executrix with full power to sell and transfer any of my real estate, that she may deem proper, and to do and perform everything necessary to be done." HELD:

    I. The widow took a life-estate only in the real and personal property. (p. 501.)

    II. General power was conferred upon her as executrix to sell and convey in fee simple any of the real estate. (p. 501.)

    III. The purchasers were not bound to look to the application of the purchase-money. (p. 503.)

    IV. The executrix under said power having sold and conveyed a tract of two hundred and forty-one and one-half acres of land, a suit brought after her death to have partition among the devisees under the will was properly dismissed.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Monongalia, rendered on the 7th day of September, 1880, in a cause in said court then pending, wherein Sisson John and George W. John, her husband, were plaintiffs, and Eliza Barnes and others were defendants, allowed upon the petition of said plaintiffs.

Hon. A. B. Fleming, judge of the second judicial circuit, rendered the decree appealed from.

The facts of the case appear in the opinion of the Court.

*Houston* and *Frame* for appellants cited the following au-

Cause submitted before Judge W. took his seat on the bench.

thorities:   12 Heisk. 645 ;  2 Burr. 1027 ;  3 Lom. Dig. 274 ;
3 Otto 326;  Wade. Law of Notice, 135;  3 How. 333;  8
Wheat. 421;  11 Gratt. 111;  8 Gratt. 140;  3 Leigh 12;  6
Leigh 696 ;  Fisher *v.* Bassett, 9 Leigh ;  Jackson *v.* Updegraft,
1 Rab;  1 Patt. & H. 121;  48 Tex. 178;  54 Ala. 342;  1 Lan.
Dig. (2d. Ed.) 465;  77 N. C. 437.

*P. H. Keck* for appellees cited the following authorities :
1 Lom. Exr's 361, 367 ;  *Id.* 219, 223;  20 Gratt. 692;  9 Gratt.
584;  2 Redf. Wills p. 122, § 18;  11 Gratt. 454;  13 Gratt.
587;  1 Lead. Cas. Eq. 76, 92;  6 Call. 308;  2 Rand. 294;
1 Story Eq. Juris, §§ 1124, 1132;  1 Lom. Dig. 243, 248.

JOHNSON, PRESIDENT, announced the opinion of the Court:

This was a suit in equity brought by Sisson John and
George W. John her husband in October, 1877, in the cir-
cuit court of Monongalia, to have partition of a tract
of two hundred and forty-one and one-half acres of land
among the devisees of John S. Dorsey, deceased, of whom
the female plaintiff was one.  The residue of said devisees
were made defendants ; also Benjamin M. Dorsey, who had
purchased said tract of land from Lucy A. Dorsey, executrix
of the last will and testament of said John S. Dorsey, de-
ceased ; also the several alienees of said Benjamin were made
defendants.  The bill alleges, that said Dorsey died testate
in October, 1855, owning among other property, which is
described, the said tract of land.  The bill exhibits the will
of said Dorsey and alleges, that said executrix sold and con-
veyed said tract as such, and states the subsequent aliena-
tions thereof.  It further alleges, that said Benjamin M.
Dorsey and the subsequent purchaser of said tract claim, that
said executrix had the right and authority under the will to
sell and convey in fee the said tract of land, and refused to
surrender the same to the said devisees, although said widow
and executrix, who, the bill alleges, had only a life estate in
said property, is dead; but that in truth said executrix only
had the right to convey such interest in said tract, as she
held under the will, that is, a life-estate only, and that they
are entitled to have it partitioned among them according to
the provisions of the will, and that, even if the will conferred

upon said executrix the power to sell and convey said land to the purchaser thereof, he had full notice, that the devisees were entitled under the will to the proceeds of such sale, and each puerchaser was bound to see to the application of such proceeds, and was responsible and liable to said devisees for the same; and said tract of land in their hands is also liable therefor.

The prayer of the bill is, " that partition be made of said tract of land among the said devisees of the said John S. Dorsey and the heirs of such as are dead, and that the said purchasers thereof be made to account to them for the sales and profits of the same from the death of said Lucy A. Dorsey, the widow, or, if it should be held, that she had the right and authority under said will to sell and convey the fee in said tract, that the said purchasers be compelled to account to the said devisees and the said heirs for the price and value of said land. And they further pray for further relief both general and special in the premises."

The will is as follows:   "Be it known that I, John S. Dorsey of Monongalia county and State of Virginia, do publish this my last will and testament. First. I direct, that all my just debts be paid, then I will and bequeath unto my son, Alvin, my set tinning tools, and unto my daughter, Eliza, one hundred dollars in money, and unto my wife, Lucy, all the balance of my estate both real and personal to have and to hold as long as she remains my widow. At her death I direct, that my estate be divided as follows: unto my sons Alvin and Rush, I will and bequeath the frame house and lot now in the occupancy of Wm. O. Protzman, and the residue of my estate I direct to be divided equally between my daughters Sisson, Lou, Argat, Mary Ellen, Lavara, Amanda, Priscilla and Eliza, and my two sons Alvin and Rush. My son George having already a considerable amount of my estate, unto him I make no bequests. I hereby constitute and appoint my wife Lucy my executrix with full power to sell and transfer any of my real estate, that she may deem proper, and to do and perform everything necessary to be done. In testimony whereof, &c."

The deed of the executrix conveying said tract of land is exhibited with the bill.

The purchasers answered the bill and insisted, that under a proper construction of the will the executrix had full power to sell and convey said tract of land, and denied, that they were bound to see to the application of the purchase-money. The depositions show, that the purchase-money, six thousand dollars, was all paid to the executrix. The said depositions further show, that said land was unproductive, the farm much out of repair, and it was greatly to the interest of the widow, who had a large family to support to convert the said realty into personalty. The bill shows, that the executrix gave bond when she was qualified in the penalty of three thousand dollars. The record fails to show, that she was ever required to give any further bond. The bill alleges, that when the widow died she only had about one thousand dollars worth of property. The evidence shows, that these heirs received the benefit of much of the proceeds of the property. The record shows, that not long before his death the testator tried to sell the said tract of land for about the same price, which the executrix received for it. According to the view, which we take of this case it is unnecessary to state more of the record.

The cause was finally heard on the 7th of September, 1880, and the court dismissed the bill with costs. From this decree the plaintiffs appealed.

Two questions only are raised by the record. The first is: Did the will of John S. Dorsey confer upon his executrix the power to sell and convey the fee in the tract of land, partition of which is sought? Second. If such power was conferred, was the purchaser bound to see to the application of the purchase-money? It is clear from the language of the will, that the widow only took a life estate in the real and personal property devised; this is admitted by the counsel for appellees. It is contended, that the will could not be construed to confer the power to sell and convey the fee in the real estate because the testator had before directed, that a certain portion of his real estate should be given to his two sons after the death of his widow. In order to arrive at the intention of the testator, the different clauses in the will must be construed together. One clause is often construed to modify another. In *Bradly* v. *Wescott*, 13 Ves. 445, the testator gave

all of his personal estate to his wife, for her sole use for life, to be at her full and absolute disposal and disposition during life; and the court held, that as the testator had given in express terms an interest for life, the ambiguous words afterwards thrown in could not extend that interest to the absolute property. The master of the rolls said: "I must construe the subsequent words with reference to the express interest for life previously given, that she is to have as full, free and absolute disposition as a tenant for life can have."

In *Smith* v. *Bell*, 6 Pet. 68, the testator gave all his personal estate, after certain payments to his wife, "to and for her own use and disposal absolutely," with a provision, that the remainder after her death should go to his son. The court held, that the latter clause qualified the former and showed, that the wife took only a life-estate. Marshall, C. J., said: "Even the words 'disposal absolutely,' may have their character qualified by restraining words connected with and explaining them to mean such absolute disposal as a tenant for life may make."

In this will the testator uses this language: "Unto my wife, Lucy, all the balance of my estate both real and personal to have and to hold as long as she remains my widow. At her death I direct, that my *estate* shall be divided as follows: Unto my sons Alvin and Rush, I will and bequeath the farm-house and lot now in the occupancy of Wm. O. Protzman, and the residue of my *estate* I direct to be equally divided between my daughters, &c. * * I hereby constitute and appoint my wife, Lucy, my executrix, with full power to sell any of my real estate, that she may deem proper, and to do and perform everything necessary to be done."

To aid in the true construction of a will evidence may be received of any facts known to the testator, which may reasonably be supposed to have influenced him in the disposition of his property; also of all the surrounding circumstances at the time of making the will. *Magers* v. *Edwards et al.*, 13 W. Va. 822. We here find this widow left with a large family, mostly daughters, to support and educate. The evidence also shows, that the farm in controversy in this suit was out of repair, and yielded but little; that a short time

before the testator's death, he had offered the farm for sale at about the same price, which executrix received for it. It is very clear to my mind, that the testator intended to give his wife full power to convert any and all the real estate into personalty, and to convey the same, as his executrix in fee, to the purchaser. As to whether the executrix by her conveyance of the other real estate mentioned in the bill passed the fee simple therein to the purchaser, or only a life-estate, or what would be the responsibility of said purchaser to the devisees, we express no opinion as these questions are not here involved.

It was in the power of the devisees, if the widow was not making proper investments or was wasting the estate, to require of her ample bond for their protection. There is no evidence, that they did so; and it may be that the reason was, that it was used for their benefit. The executrix, by giving her deed for the farm of two hundred and forty-one and one-half acres to Benjamin M. Dorsey conveyed to him the fee in said farm, as she had the power to do. She had a general power to sell and convey, therefore the purchasers took a good title, and was not bound to enquire what was to be done with the purchase-money. This is not one of those cases, in which the executrix has a qualified power to sell real estate, as if the personalty shall not be sufficient to pay the debts, therefore many of the authorities cited by the appellants have no application here. It is clear, that the purchasers were not bound to see to the application of the purchase-money.

When an interval must or may properly elapse between the sale and the application of the purchase-money, the purchaser is not bound to see to its application. *Woolwine* v. *Woodrum*, 19 W. Va. 67. Here the application of the purchase-money was not to be made until the widow either married again or died.

There is no error in the decree complained of and it is affirmed with costs and thirty dollars damages.

JUDGES GREEN AND SNYDER CONCURRED,

DECREE AFFIRMED,