# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## ELLA L. RINKER'S ADMINISTRATOR, ET ALS. V. NINA A. SIMPSON.

November 17, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

614

The opinion states the case.

*Ward Swank,* for the appellants.

*F. S. Tavenner,* for the appellee.

EPES, J., delivered the opinion of the court.

This is a suit in chancery brought in the Circuit Court of Rockingham county by Nina A. Simpson against Brock T. White, administrator *c. t. a.* of Ella L. Rinker, Lillian N. White and Brock T. White as trustees under the will of Ella L. Rinker, Lillian H. White, in her own right, and Elizabeth White, Dorothy White and Helen White, the last three being all the children of Lillian R. White, who survived Ella L. Rinker. The cause was heard upon the bill and a demurrer thereto.

The material allegations of the complainant's bill, which was filed in April, 1931, are as follows:

Ella L. Rinker died in February, 1928, leaving a will dated March 15, 1916, which was admitted to probate by the clerk of the Circuit Court of Rockingham county on February 29, 1928, at which time Brock T. White was appointed and qualified as administrator *c. t. a.* Omitting the purely formal parts, this will reads:

"I will to my sister, Lillian H. White, all my property, both personal and real estate, her lifetime; after her death it is to go to her children, except $1,000.00 which Lillian H. White or Brock T. White shall hold in trust for Nina A. Garrison, using it for her, both interest and principal, entirely as they deem best for her, and I have instructed them what disposition to make of any of the amount above mentioned that should remain at her death."

Nina A. Garrison is not a blood kinswoman of Ella L. Rinker, but when she was about seven years old Ella L. Rinker took her into her home and raised her as a member of her family. She remained in the Rinker home until about 1921, at which time she was thirty-five years old.

Nina A. Garrison married J. A. Simpson, and they have four children. For several years before and ever since her marriage she has been in delicate health. During the year preceding the institution of this suit, she had undergone

four operations. One of these, performed at Memorial Hospital, Harrisonburg, Virginia, on February 5, 1931, was a very serious operation and involved the removal of her uterus and other vital organs. When she filed her bill she was in the hospital, physically helpless, and without means to meet her necessary expenses for maintenance and medical and hospital attention.

Her husband is fifty-two years old. Before their marriage be had undergone serious operations, and since their marriage has been in bad health and incapable of earning proper support for his wife and their four children. He is not able to do hard manual labor, which is the only kind of work for which he has been fitted by education and training. He has a small home and a very limited amount of means, but after meeting the ordinary and necessary expenses of the family, he has "little or nothing" left to care for emergencies.

There is no assurance that the health of either the complainant or her husband will be speedily, if ever, restored.

Neither Brock T. White nor Lillian H. White, the trustees mentioned in the will, have paid to or for Nina A. Simpson any part of the principal or income of the $1,000 bequeathed to them in trust for her. They have not made any settlement of their account as such trustees, and have refused to inform her as to how the trust fund is invested and secured; and though Mrs. Simpson has requested them to pay over to her the principal and income of the trust fund, or some part thereof, they have refused to do more than "advance" to her the net proceeds of one year's interest, amounting to about fifty-five dollars.

The attitude of the trustees with reference to the administration of this trust is indicated by the following excerpts copied into the bill from two letters written by Brock T. White. While the bill does not so allege, these letters seem to have been written by him to counsel for Mrs. Simpson in reply to letters neither the substance nor text of which are given in the bill.

618

In a letter dated January 8, 1931, he says:

"Under no circumstances will she (Mrs. White) pay Mrs. Simpson any part of the principal for self-expenditure. Should it become necessary to use any part of the principal for Mrs. Simpson's benefit, Mrs. White herself will make the expenditure.

"Mrs. White wishes me to say further that if Mrs. Simpson is in need of hospital treatment, she does not feel justified in using any of the principal for such purpose, since she has a living husband who is able and whose duty it is to pay such expenses."

In a letter dated January 16, 1931, he says:

"Your note requesting to know the status of trust fund for Mrs. Simpson has been received.

"I must decline to give further facts about this matter except the negative information that the fund is no personal liability of mine nor of any member of my family. Neither will any member of my family benefit by any residue after the trust has been discharged.

"If Mr. Simpson is taking Mrs. Simpson to a hospital within a very short time, as indicated in your letter, and they are in need of ready funds, Mrs. White directs me to state that she will arrange to advance the net proceeds of one year's interest which she will apply to hospital expenses. The interest will be due December 1st next and will be sixty dollars, less taxes and bank discount, netting about fifty-one dollars."

The bill prays: "That the court construe the will of the said Ella L. Rinker and declare, fix and establish the right of complainant to the bequest of one thousand dollars ($1,000.00) made by the said Ella L. Rinker in her said will in trust for complainant, and declare that the trust shall be treated as terminated, and the amount due thereon paid to complainant; that the defendants, Lillian H. White and Brock T. White, trustees, be required to account for the said fund and show how and where the same is invested, and make proper settlement of the same before a com-

missioner of the court; and in the event the said defendants cannot be required to pay to complainant the entire fund, that the said trustees be required to apply the principal and interest on the said fund in payment of necessary medical and surgical, hospital and nursing expenses, and for her maintenance and support, as contemplated by the said will; and that all such other, further and general relief be granted as the necessities of the case may require or to equity may seem meet, * * *."

The defendants demurred to the bill, stating as their ground of demurrer, "That the said plaintiff, Nina A. Simpson, is not possessed of such interest in the subject matter herein as to entitle her to maintain this suit."

The court, by its decree entered on November 28, 1931, overruled the demurrer and granted leave to the defendants "to file their answer within thirty days to the said bill, not in conflict with the opinion of the court filed in this cause."

In its opinion, which it made a part of its decree, the court held: (1) The declaration in the will that the testatrix had instructed the trustees "what disposition to make of the amount above mentioned that should remain at her [Nina A. Simpson's] death," was not valid as a bequest over of so much of the trust estate as should not have been expended by the trustees for the benefit of Nina A. Simpson during her lifetime.

(2) "The entire fund is made the subject of a trust for the benefit of complainant and the only discretion given trustees is for them to ascertain what use would be to the best interests of the beneficiary; no discretion as to whether only the interest should be used, or the interest and only part of the principal should be used, but unqualifiedly declaring that the entire fund should be used for her without limitation as to her needs and without any declaration as to when the trust should close, other than indirectly by the declaration that if any part should remain at death of complainant, she (testatrix) had advised the trustees how to dispose of the same, and no alternate beneficiaries named."

(3) "* * * the beneficiary of the trust being *sui juris,* it follows that she has not only the right to an accounting on the part of the trustees, but to a termination of the trust, notwithstanding the discretionary powers given the trustees, especially as it appears from the facts set out in the bill that such discretion has been abused."

From this decree an appeal has been allowed to the defendants.

Clearly, Mrs. Simpson is entitled to an accounting by the trustees, and this alone was sufficient reason for overruling the demurrer to the bill. *Wm. E. Barbour* v. *Mathew J. Cummings, Trustee,* 26 R. I. 201, 208, 58 Atl. 660, 661. But there are other reasons also why the demurrer should have been overruled.

The statement in the will, "I have instructed them what disposition to make of any of the amount above mentioned that should remain at her death," is not valid as a gift over of so much of the trust estate as may remain unexpended at the death of Mrs. Simpson. Each and every part of a will (except in the cases provided for in section 5231) must be in writing, and if any part is in parol such part is void and inoperative. Section 5229; *Sims* v. *Sims,* 94 Va. 583, 27 S. E. 436, 64 Am. St. Rep. 772. However, though void as a gift over, this language in the will has a very important bearing on the definition of the trust. It shows clearly that it was not the intention of the testatrix to give to Mrs. Simpson such an equitable estate in this trust fund as entitles her in any and all events to demand the payment to or for her of the whole fund.

The primary purpose of the trust created by the will is the benefit of Mrs. Simpson. To this end all the powers given to and the discretion vested in the trustees are directed, and the trustees are given the power to expend not only the income from the trust fund, but the whole principal of the fund, if they deem it best for her that they should do so. The existence of a residue of the fund at the

death of Mrs. Simpson is in no sense an end or purpose of the trust. It is contemplated only as something that may incidentally happen in the administration of the trust in a manner which, in the honest judgment of the trustees, is for the best interest of Mrs. Simpson. They are given a wide discretion as to when, in what amounts, and for what purposes for the benefit of Mrs. Simpson they will make payments from the income and principal of the fund, but the principle which must guide them in the exercise of their discretion is what, in their honest judgment, they "deem best" for her interest.

The discretion given to them by the will is not the uncontrolled right to chose whether they will or will not expend any part of the trust for her benefit, but a right to decide in the exercise of an honest judgment when and to what extent they shall make payments to or for Mrs. Simpson to accomplish the purpose of the trust, i. e., promote her best interest. The will imposes upon the trustees the positive duty to administer the trust for Mrs. Simpson's best interest, and to exercise the discretion vested in them in good faith to the end that the intention of the testatrix may be accomplished.

The discretion vested in the trustees is a very broad discretion, so long as it is in good faith exercised within the limits of a sound and honest execution of the trust, but it is not an arbitrary discretion. Generally speaking, a court of chancery will not interfere with the exercise by the trustees of their discretion under a trust such as that here under consideration. *Trout* v. *Pratt,* 106 Va. 431, 56 S. E. 165, 8 L. R. A. (N. S.) 398; *Givens* v. *Clem,* 107 Va. 436, 59 S. E. 413; *In re Hamburger's Will,* 185 Wis. 270, 201 N. W. 267, 37 A. L. R. 1413, and note; *Read* v. *Patterson,* 44 N. J. Eq. 211, 14 Atl. 490, 6 Am. St. Rep. 877, and note. But where the trustees are acting in bad faith in the exercise of their discretion, or they are plainly abusing their discretion, or exercising it in such an arbitrary manner as, in effect, to make it a means of destroying the trust which

it was intended to aid and maintain, a court of chancery will intervene and compel the trustees to administer the trust in a proper manner, and at the proper time. Lewin on Trusts (13th ed.) pp. 394, 396; Perry on Trusts and Trustees (6th ed.) sections 248, 510-511; 28 A. & E. Ency. of L. (2nd ed.) 985, 991; *Read* v. *Patterson,* 44 N. J. Eq. 211, 14 Atl. 490, 6 Am. St. Rep. 877, and note; *Pole* v. *Pietsch & Thiede,* 61 Md. 570; *Bryan* v. *Knickerbacker,* 1 Barb. Ch. (N. Y.) 409; *Cromie* v. *Bull,* 81 Ky. 646, 652; *Cutter* v. *Burroughs,* 100 Me. 379, 61 Atl. 767; *Bound* v. *South Carolina R. Co.* (C. C.), 50 Fed. 853; *Re Weaver,* 21 Ch. D. 615 (C. A.); *Feltham* v. *Turner,* 23 L. T. (N. S.) 345; *Dillard* v. *Dillard,* 97 Va. 484, 34 S. E. 60; *Trout* v. *Pratt,* 106 Va. 431, 56 S. E. 165, 8 L. R. A. (N. S.) 398.

The bill in this cause states a case in which the trustees are plainly abusing their discretion, and, if they can be said to be exercising the discretion vested in them, are exercising it in such an arbitrary manner as, in effect, to defeat the ends and purposes of the trust for the attainment of which they have been vested with a discretion in the premises. While this abuse of their discretion does not entitle Mrs. Simpson to have the court terminate the trust and order the whole trust fund paid over to her, it does entitle her to have a court of chancery intervene and compel a proper administration of the trust in accordance with a sound and reasonable discretion. A court of chancery will not permit the plain ends and purposes of a discretionary trust to be defeated by the arbitrary exercise of their discretion by trustees, even though to prevent it the court must substitute its discretion for that of the trustees.

If the case alleged be proven, it is a case in which the court should compel the trustees to make an accounting, and require them to pay to Mrs. Simpson, or for her use, so much of the income and principal of the trust fund as will enable her to have proper medical, nursing and hospital attentions; and to pay for such attentions as have been rendered her since January 1, 1931. And the court should

further require them to pay to or for her such other sums, either presently or from time to time, as in the exercise of a sound and reasonable discretion shall appear to be proper in the administration of this trust for the best interest of Mrs. Simpson, even though the payments so ordered to be made may consume the whole of the trust fund.

As the opinion of the trial court, which is made a part of the decree appealed from, is in some respects in conflict with the views herein expressed, the decree will be modified by striking therefrom all references to the opinion of the trial court. As so modified the decree appealed from will be affirmed, and the cause remanded for further proceedings to be had therein not in conflict with the views herein expressed. The order here entered will provide also for the payment of the costs of this appeal by Brock T. White and Lillian H. White, and that the same shall not be charged against the trust fund here involved.

*Decree modified and affirmed.*